UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHARTER BANK,<br><br>Defendant. | ) | CIVIL ACTION NO. 2:16-cv-413 |

**COMPLAINT**

The United States of America alleges:

1. This action is brought by the United States to enforce the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f ("ECOA").

2. From at least January 1, 2009 to June 30, 2014, Defendant Charter Bank ("Charter" or "the Bank") engaged in a pattern or practice of discrimination on the basis of national origin because it charged hundreds of Hispanic borrowers higher interest rates on consumer loans secured by motor vehicles already owned by the borrower ("vehicle-secured consumer loans") than the rates charged to similarly-situated non-Hispanic borrowers.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 15 U.S.C. § 1691e(h).

4. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Charter's principal place of business is in the Southern District of Texas and because a substantial part of the events or omissions giving rise to this action occurred in the Southern District of Texas.

5. Charter is a state-chartered bank based in Corpus Christi, Texas. Charter operates four branches – three in Corpus Christi, and one in Rockport, Texas.

6. As of June 30, 2016, the Bank had total assets of approximately $268 million. Charter is subject to the regulatory authority of the Federal Deposit Insurance Corporation ("FDIC").

7. Charter offers a variety of loan products, including consumer loans, mortgage loans, and commercial loans. The Bank originates its loans through loan officers and other employees operating at its branches.

8. The vehicle-secured consumer loans at issue allow a customer to borrow from Charter using a car he or she already owns as the collateral securing repayment. In other words, the loans allow the borrower to tap the equity in his or her car and do not fund the borrower's acquisition of the car. Between January 1, 2009 and June 30, 2014, the average principal amount of vehicle-secured loans originated by Charter was approximately $10,600, and the average interest rate was approximately 13.5%.

9. Charter is subject to federal laws governing fair lending, including ECOA and the regulations promulgated thereunder. ECOA prohibits financial institutions from discriminating on the basis of, *inter alia*, national origin in their lending practices. Charging higher prices for loans on the basis of national origin, including charging higher rates of interest, is one of the discriminatory lending practices prohibited by ECOA. Charter is a "creditor" within the meaning of section 702(e) of ECOA, 15 U.S.C. § 1691a(e).

10. Beginning in October, 2013, the FDIC conducted an examination of the lending practices of Charter to evaluate compliance with ECOA. Based on analysis of the average rates

of interest that the Bank charged on vehicle-secured consumer loans made between July 31, 2012 and August 31, 2013, the FDIC found reason to believe that Charter had engaged in a pattern or practice of discrimination on the basis of national origin against Hispanic borrowers.

11. On June 12, 2014, following its examination, the FDIC referred the lending practices of Charter to the United States Department of Justice pursuant to 15 U.S.C. § 1691e(g).

12. After receiving the referral from the FDIC, the United States analyzed the interest rates that Charter charged for vehicle-secured consumer loans originated between January 1, 2009 and June 30, 2014. Applications for the vehicle-secured consumer loans analyzed by the United States did not contain information on the national origin of borrowers. To evaluate any differences in interest rates, the United States assigned the probability of Hispanic national origin to applicants whose national origin Charter had not identified. The United States employed a proxy methodology that combines geography-based and name-based probabilities, based on public data published by the United States Census Bureau, to form a joint probability using the Bayesian Improved Surname Geocoding (BISG) method. The Hispanic national origin probabilities obtained through the BISG method were then used directly in the United States' models to estimate any disparities in interest rates on the basis of Hispanic national origin.

13. The United States also reviewed and evaluated the Bank's loan policies, procedures, and practices for that time period, as well as rate sheets that Charter provided to its loan officers to be used in pricing vehicle-secured consumer loans. According to the Bank, it had a policy prior to August, 2014 that allowed loan officers discretion to deviate upward or downward from the interest rates listed on rate sheets by approximately three percentage points.

These rate sheets provided only very limited specificity on how to use this discretion to set interest rates. The Bank implemented a revised loan pricing policy in August, 2014 that prohibited discretionary adjustments from the interest rate listed on rate sheets.

14. Between at least January 1, 2009 and June 30, 2014, Charter made approximately 500 vehicle-secured consumer loans to Hispanic borrowers. During this period, Charter charged interest rates to Hispanic borrowers for vehicle-secured consumer loans that were 151 basis points[1] higher, on average, than the rates charged to non-Hispanic borrowers. This disparity is statistically significant.

15. After accounting for credit risk factors that the Bank documented it considered in pricing vehicle-secured loans, such as loan term, loan amount, loan-to-value ratio, debt-to-income ratio, and indicators of the borrower's credit history, Charter charged interest rates to Hispanic borrowers between at least January 1, 2009 and June 30, 2014 that were 108 basis points higher, on average, than the rates charged to similarly-situated non-Hispanic borrowers. This disparity is statistically significant, and the difference is based on national origin and not based on creditworthiness or other objective criteria related to borrower risk. The disparity means that hundreds of Hispanic borrowers were obligated to pay, on average, over $150 more each in interest than similarly-situated non-Hispanic borrowers.

16. The higher rates of interest that Charter charged to Hispanic borrowers for vehicle-secured consumer loans are a result of Charter's policy or practice of giving its employees broad subjective discretion not based on credit risk factors in setting the interest rate for vehicle-secured consumer loan transactions. Information as to each applicant's national origin was available and known to the Bank's loan officers, who personally handled each loan

---

[1] One basis point represents one hundredth of a percentage point (0.01%).

transaction. Charter did not properly instruct its loan officers regarding their obligation to treat prospective customers without regard to national origin, and the Bank failed to supervise or monitor the performance of its loan officers to ensure compliance with fair lending laws.

17. Charter's policy or practice of giving its employees broad subjective discretion in setting the interest rate for vehicle-secured consumer loan transactions had a disparate detrimental impact on Hispanic borrowers compared to similarly-situated non-Hispanic borrowers.

18. Charter's policy or practice as described in paragraph 17 is not justified by business necessity or legitimate business interests that cannot reasonably be achieved as well by means that are less disparate in their impact on Hispanic borrowers.

19. Charter's actions, policies, and practices, as alleged herein, constitute discrimination against applicants with respect to credit transactions on the basis of national origin in violation of ECOA.

20. Charter's actions, policies, and practices, as alleged herein, constitute a pattern or practice of resistance to the full enjoyment of rights secured by ECOA.

21. Persons who have been victims of Charter's discriminatory actions, policies and practices are affected persons as defined in ECOA, 15 U.S.C. § 1691e, and have suffered injury and damages as a result of Charter's violation of ECOA.

22. Charter's pattern or practice of discrimination has been intentional, willful, and implemented with reckless disregard for the rights of Hispanic borrowers.

WHEREFORE, the United States prays that the Court enter an ORDER that:

1. Declares that the policies and practices of the Defendant constitute violations of the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f;

2. Enjoins the Defendant, its agents, employees, successors, and assigns, and all other persons in active concert or participation with it, from:

a. Discriminating on the basis of national origin against any person with respect to any aspect of a credit transaction;

b. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendant's unlawful conduct to the position they would have been in but for the discriminatory conduct; and

c. Failing or refusing to take such actions as may be necessary to prevent the recurrence of any such discriminatory conduct in the future.

3. Awards equitable relief and monetary damages to all the victims of the Defendant's discriminatory policies and practices for the injuries caused by the Defendant, including direct economic costs, consequential damages, and other damages, pursuant to 15 U.S.C. § 1691e(h).

The United States further prays for such additional relief as the interests of justice may require.

Dated: September 28, 2016

Respectfully submitted,

LORETTA E. LYNCH
Attorney General

KENNETH MAGIDSON
United States Attorney
Southern District of Texas

VANITA GUPTA
Principal Deputy Assistant Attorney General
United States Department of Justice
Civil Rights Division

DANIEL HU
Assistant United States Attorney
Chief, Civil Division

SAMEENA SHINA MAJEED
Chief
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section

KEITH EDWARD WYATT
Assistant United States Attorney
United States Attorney's Office
Texas Bar No. 22092900
Federal Bar No. 3480
1000 Louisiana, Suite 2300
Houston, Texas 77002
Phone: (713) 567-9713
Fax: (713) 718-3303
keith.wyatt@usdoj.gov

DANIEL M. MOSTELLER
Acting Special Litigation Counsel
for Fair Lending
PATRICIA L. O'BEIRNE
Trial Attorney
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, N.W. – NWB
Washington, DC 20530
Phone: (202) 514-4713
Fax: (202) 514-1116
patricia.o'beirne@usdoj.gov